UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SANTEE WALL,

                    Petitioner,                Case No. 1:17-cv-286

v.                                      Honorable Paul L. Maloney

LORI GIDLEY,

                    Respondent.

_____/

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Santee Wall is presently on parole under the supervision of the Michigan Department of Corrections. On February 24, 2015, after two hours of testimony from five witnesses, a Kalamazoo County Circuit Court judge found Petitioner guilty of possession of burglar tools, MICH. COMP. LAWS § 750.116, breaking and entering a vehicle with damage, MICH. COMP. LAWS § 750.356a(3), and a misdemeanor, attempted breaking and entering a motor vehicle, MICH. COMP. LAWS § 750.356a(2)(a). On March 23, 2015, the court sentenced Petitioner as a habitual offender-fourth offense, MICH. COMP. LAWS § 769.12, to concurrent terms of imprisonment of 2 to 15 years on each felony count and 30 days on the misdemeanor.

On March 6, 2017, Petitioner filed his habeas corpus petition raising six grounds for relief, as follows:

    I.     PETITIONER'S CONVICTIONS MUST BE REVERSED WHERE THE EVIDENCE WAS INSUFFICIENT TO PROVE BEYOND A

REASONABLE DOUBT THAT DEFENDANT ACTUALLY COMMITTED THE CRIMES; ALTERNATIVELY, THE VERDICTS WERE AGAINST THE GREAT WEIGHT OF THE EVIDENCE AND DUE PROCESS THEREFORE REQUIRES REVERSAL UNDER BOTH THE UNITED STATES CONSTITUTION AM. XIV; MICH CONST 1963 ART. 1 § 17.

II.    PETITIONER'S FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED AND HE IS ENTITLED TO A NEW TRIAL WHERE TRIAL COUNSEL FAILED TO PURSUE FORENSIC TESTING OF THE EVIDENCE AND THE VEHICLE INVOLVED.

III.    DID DEFENSE TRIAL COUNSEL PROVIDE CONSTITUTIONALLY DEFECTIVE SERVICE WHERE SHE:

A.  FAILED TO INVESTIGATE AND UTILIZE BUS TICKETS IN THE NAME OF JAMES OSBY THAT TENDED TO EXCULPATE PETITIONER FROM LIABILITY;

B.  FAILED TO FILE A PRETRIAL MOTION IN LIMINE TO SUPPRESS EVIDENCE THAT WAS IMPROPERLY HANDLED; AND,

C.  FAILED TO REQUEST A CORPOREAL LINE UP THAT WOULD HAVE EXCULPATED THE PETITIONER?

IV.    PETITIONER'S CONVICTION NEEDS TO BE REVERSED WHERE HE WAS NOT PROPERLY ARRAIGNED IN CIRCUIT COURT AND THE HABITUAL OFFENDER FOURTH NOTIFICATION WAS NOT SUBMIT[T]ED IN THE 21 DAYS PERMITTED BY STATUTE.

V.    THERE WAS INSUFFICIENT EVIDENCE TO CONVICT PETITIONER OF ATTEMPTED BREAKING AND ENTERING A VEHICLE TO STEAL PROPERTY LESS THAN $200 WHERE NEITHER THE CAR, NOR VICTIM WAS EVER LOCATED.

VI.    DUE PROCESS REQUIRES CORRECTION OF THE PSI WHERE IT CONTAINS INACCURACIES. . . .

(Br. in Supp. of Pet., ECF No. 1, PageID.13-14.)  Respondent has filed an answer to

the petition (ECF No. 13) stating that the grounds should be denied because they are

non-cognizable, procedurally defaulted, and/or meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

<u>Discussion</u>

I.    <u>Factual Allegations</u>

Petitioner was convicted based on the testimony of five witnesses.

**A.    Leslie Seda (Trial Tr., ECF No. 14-5, PageID.328-334)**

During the afternoon of October 17, 2014, Leslie Seda was working at The Cash Store on Gull Road in Kalamazoo when a co-worker informed her that someone had busted the window out of her 2005 Buick Rendezvous. There were several pieces of mail missing from her vehicle. The prosecutor showed her several documents that Ms. Seda identified as the documents missing from her car.

**B.    Richard Campbell (Trial Tr., ECF No. 14-5, PageID.335-348)**

That evening, Richard Campbell was taking his dinner break from his job at the AT&T store in Portage. He quickly ate his meal then settled into his car in the parking lot for a quick nap. He was fully reclined behind heavily tinted windows when he heard someone trying to break into the car next to his. He hopped out of the car to confront the person. The man, wearing a flannel shirt and beanie, started to walk away and then broke into a run. Mr. Campbell called the police. He pointed the police in the direction the man had fled. Later, he traveled to the location where police had detained Petitioner and he identified Petitioner as the man who had attempted to enter the neighboring car.

**C.    Sierra Smith (Trial Tr., ECF No. 14-5, PageID.349-358)**

Sierra Smith testified that during the evening of October 17, 2014, she was working at the Red Robin restaurant in Portage, Michigan.  A police officer came into the restaurant looking for an African-American man wearing a plaid flannel shirt. She told the policeman she had seen someone matching that description in the restaurant.  At that moment, however, he was not in his booth.  She surmised that he had been in the bathroom because that is where the police located him.

### D.    Robert Swantek (Trial Tr., ECF No. 14-5, PageID.360-392)

Portage police officer Robert Swantek testified that he responded to Richard Campbell's call.  He attempted to follow after the person who had fled after being confronted by Mr. Campbell.  Along the way, others told him a man matching the description provided by Campbell had passed by.  One person told him that the man had headed to the Red Robin restaurant.  Officer Swantek spoke with Sierra Smith at the Red Robin restaurant.  Officer Swantek saw the man as he exited the restaurant bathroom.

In the bathroom, Officer Swantek found a hat and flannel shirt at the top of the trashcan.  Inside the "balled up" shirt and hat were papers that had been taken from Ms. Seda's vehicle and other papers.  Officer Swantek also found money, a cell phone, a glove, a punch, and a flashlight.  Officer Swantek testified that the punch was the sort of tool used to break a car window.  Officer Swantek held the man until another officer brought Mr. Campbell to the restaurant.  Mr. Campbell confirmed the man the police had apprehended, Petitioner, was the man who was trying to break into the car next to Campbell's.

### E.    Adam Kelm (Trial Tr., ECF No. 14-5, PageID.393-398)

Deputy Adam Kelm testified that he responded to Ms. Seda's report of the broken car window and theft.  He received the physical evidence from the Portage police department.  He did not pursue any forensic testing of the evidence.

### F.    The verdict (Trial Tr., ECF No. 14-5, PageID.409-427)

The trial court heard arguments and then took a three-hour recess before rendering the verdict.  The trial court found that the man seen by Mr. Campbell intended to break into the car next to Mr. Campbell's.  She also found that Petitioner was that man.  Accordingly, she determined Petitioner was guilty of attempted breaking and entering into a vehicle.

The court found that Ms. Seda's car had been damaged and broken into. Moreover, the court found that at the time of the breaking and entering, the person, Petitioner, had intended to permanently deprive Ms. Seda of some property. Accordingly, she determined Petitioner was guilty of breaking and entering a motor vehicle with damage to the vehicle.

The court found that the punch and the flashlight were burglar's tools, that Petitioner knowingly possessed them, and that Petitioner intended to use them to break and enter a vehicle when he possessed them.  Accordingly, she found Petitioner guilty of possession of burglar's tools.

### G.    The sentences (Sentencing Tr., ECF No. 14-7)

On March 23, 2015, the court sentenced Petitioner as outlined above.  Although his sentences for the crimes committed on October 17, 2014, were concurrent to each

other, they were consecutive to the sentences for the offenses for which he was on parole when he committed the October 17, 2014, crimes.  By statute, a prisoner incarcerated by the Michigan Department of Corrections is not eligible for parole until he has served a period of time equal to the minimum sentence imposed by the court.  MICH. COMP. LAWS § 791.234.  That is borne out by Petitioner's parole here. He was released on parole two years to the day after he was sentenced.  It must be the case, therefore, that Petitioner completed the minimum two years on his felony sentences.  Petitioner must also, therefore, have completed the entirety of his concurrent misdemeanor sentence of 30 days.  The circuit court docket indicates that the 30 day sentence had a "start date" of March 23, 2015.  (Kalamazoo Cnty. Cir. Ct. Register of Actions, ECF No. 14-1, PageID.237.)

### H.    Petitioner's appeals

Petitioner, with the assistance of counsel, directly appealed his convictions and sentences.  Petitioner raised the first two issues identified above in the appeal brief he filed with the assistance of counsel.  (Appellant's Br., ECF No. 14-9, PageID.487.) Petitioner raised the remaining four issues, plus subparts, in his pro per brief on appeal.  (Appellant's Standard 4 Br., ECF No. 14-9, PageID.573.)  By opinion entered July 14, 2016, the Michigan Court of Appeals rejected all of Petitioner's challenges as meritless.  (Mich. Ct. App. Op., ECF No. 14-9, PageID.464-470.)

Petitioner then filed a pro per application for leave to appeal in the Michigan Supreme Court raising all of the issues he raised in the Michigan Court of Appeals. (Appl. for Leave to Appeal, ECF No. 14-10, PageID.621-622.)  The supreme court

denied leave by order entered January 31, 2017. (Mich. Order, ECF No. 14-10, PageID.619.)

Petitioner did not file a petition for certiorari in the United States Supreme Court. (Pet., ECF No. 1, PageID.3.) Instead, he filed this habeas petition. Three weeks later, he was paroled.[1] He remains on parole under the supervision of the Michigan Department of Corrections.

II.    AEDPA Standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

---

[1] The Michigan Department of Corrections Offender Tracking Information System (OTIS) entry regarding Petitioner discloses the date of his parole. OTIS also discloses Petitioner's active and inactive sentences. http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=182789. This Court takes judicial notice of the information provided by a search of the MDOC OTIS website with regard to Petitioner. *See, e.g. Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249 *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821–22 n.3 (E.D. Mich. 2004).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words,

9

"[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    <u>Jurisdiction</u>

Title 28, section 2254 (a) provides:

[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or law or treaties of the United States.

28 U.S.C. § 2254(a). "[The Supreme Court has] interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time his petition is filed." *Maleng v. Cook*, 490 U.S. 488, 490-491 (1989) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968). In *Maleng*, the petitioner's sentence had fully expired at the time he filed his petition. Nonetheless, he argued he was "in custody" because the conviction might still be used to enhance sentences for subsequent crimes. The Supreme Court rejected so expansive a reading

10

of the "in custody" requirement stating: "[w]hile we have very liberally construed the "in custody" requirement for purposes of federal habeas, we have never extended it to the situation where a habeas petitioner suffers **no present restraint from a conviction**." *Maleng*, 490 U.S. at 492 (emphasis added).

Despite the "no present restraint" language of *Maleng*, the Supreme Court has permitted challenges to the first of multiple consecutive sentences even though the first sentence had been fully served. *See Garlotte v. Fordice*, 515 U.S. 39, 45-46 (1995). But the Supreme Court has never permitted such a challenge where the expired sentence was concurrent to a continuing sentence, as is the case here. The Sixth Circuit has concluded that the district court has no jurisdiction to entertain a habeas application in that circumstance. *See Bowling v. White*, 694 F. App'x 1008 (6th Cir. 2017); *see also Worlds v. Russell*, No. 98-4471, 2000 WL 125806 (6th Cir. Jan. 28, 2000) (the district court did not have jurisdiction to hear habeas challenge to misdemeanor convictions where the petitioner had finished serving misdemeanor sentences and he was only in custody on concurrent felony sentence). Accordingly, this Court does not have jurisdiction to consider Petitioner's challenges with respect to his conviction for attempted breaking and entering of a vehicle. The Court will disregard that portion of habeas issues I, II, and III that relate to that conviction, as well as the entirety of issue V, which relates solely to the misdemeanor count.

IV.    Sufficiency of the Evidence (habeas issue I)

Petitioner contends there was insufficient evidence to convict him of either felony count.  The crux of his argument, however, is that there was no forensic testing to link the stolen documents or burglary tools to him or to link him to Ms. Seda's car.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second,

deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).    This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.  *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving Petitioner's sufficiency claim, the Michigan Court of Appeals applied the following standard:

> We review challenges to the sufficiency of the evidence de novo, viewing the evidence "in the light most favorable to the prosecution" to determine whether a rational trier of fact "could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Odom*, 276 Mich App 407, 418; 740 NW2d 557 (2007).  "Conflicts in the evidence must be resolved in favor of the prosecution," and "[c]ircumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime."  *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010).  "Special deference is given to a trial court's findings when based on witness credibility."  *People v Sherman-Huffman*, 241 Mich App 264, 267; 615 NW2d 776 (2000).

(Mich. Ct. App. Op., ECF No. 14-9, PageID.465.)  The court of appeals relied upon *People v. Odom* which relies upon *People v. Johnson*, 597 N.W.2d 73, 75 (Mich. 1999) as authority for the appropriate standard.  The *Johnson* court, in turn, relied upon *People v. Wolfe*, 489 N.W.2d 748 (Mich. 1992).  The *Wolfe* court acknowledged that the Michigan courts were simply applying the *Jackson v. Virginia* standard.  *Wolfe*, 489 N.W.2d at 750.  Thus, at a minimum, it appears the Michigan Court of Appeals applied the right standard.

Moreover, the court of appeals applied the standard correctly. It considered the evidence to assess whether, construed in a light most favorable to the prosecution, the prosecution had proven the elements of the offenses beyond a reasonable doubt. (Mich. Ct. App. Op., ECF No. 14-9, PageID.465-67.) The state appellate court noted that Petitioner's argument focused on the evidence that was not presented rather than the evidence that was:

> Both through counsel and in his in pro per brief, defendant contends that the police investigation into this case was lackadaisical and therefore inadequate evidence was gathered and presented. Defendant notes that the officers failed to check Seda's car and the various items found in the Red Robin trash receptacle for DNA or fingerprint evidence. There was no evidence that defendant had possessed the "burglar's tool" found in the discarded shirt's pocket, defendant insists, as anyone in the restroom could have snuck the tool into the shirt. No forensic evidence connected the hole punch to the breaking and entry of Seda's car.

> Defendant challenges the adequacy of the identification evidence, emphasizing that the witnesses gave differing accounts of the suspect's clothing and that no one observed the robbery in Seda's vehicle. Defendant further complained that the investigating officers took no evidence regarding who else may have recently used the Red Robin bathroom and posed no questions to the other men in the bathroom at that time.

> *      *      *

> Contrary to defendant's many protestations, the evidence was sufficient to support defendant's convictions and those convictions were not against the great weight of the evidence. Someone attempted to break into a vehicle parked next to Campbell shortly after and near where another vehicle was successfully burgled, suggesting that the same individual was involved in both crimes. Campbell observed the suspect in close proximity. As the individual had covered his hand to prevent leaving fingerprints, it was unlikely the person owned the vehicle he was trying to enter. And Campbell had ample opportunity to observe the individual's features so he could later identify him.

> The officers followed the evidence through the fast food restaurant and to the Red Robin parking lot, where a citizen witnessed a similarly clad man go inside. A waitress seated a man matching the suspect's description and wearing the clothes described by Campbell. And defendant exited the bathroom shortly after someone

14

placed the shirt and hat described by Campbell into the trashcan.  Intertwined with the shirt and hat was paperwork stolen from Seda's vehicle.  A tool was also located that could have assisted the culprit in breaking Seda's window.  Once the officers brought defendant outside, Campbell positively identified him despite that he had altered his clothing in the interim.

Although this evidence was circumstantial, it was more than adequate to link defendant to the charged offenses.  Forensic analysis was not required to solidify the case beyond any possible doubt.  The officers did not question the other men in the restroom because the suspect was identified as African American and defendant was the only African-American male in close vicinity.  And Smith positively testified that the man matching Campbell's description of the suspect came into the restaurant and had only one hand.  Defendant, who has only one hand, came out of the bathroom just after someone placed the suspect's clothing in the trashcan.  The coincidence was too great for the factfinder to ignore.

(Mich. Ct. App. Op., ECF No. 14-9, PageID.466-467.)  Petitioner has failed to explain how the state appellate court's determination is contrary to, or an unreasonable application of, *Jackson v. Virginia*.  "'Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.'"  *Davis*, 658 F.3d at 535 (quoting *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010)); *see also Stewart v. Wolfenbarger*, 595 F.3d 647, 656 (6th Cir. 2010) ("In assessing the proof, a court may sustain a conviction based upon nothing more than circumstantial evidence.").

Petitioner also suggests that the evidence was insufficient because it did not include forensic evidence.  The state appellate court concluded "forensic analysis was not required . . . ."  (Mich. Ct. App. Op., ECF No. 14-9, PageID.466.)  That conclusion is entirely consistent with clearly established federal law: neither the police nor the prosecutor "have a constitutional duty to perform any particular tests."  *Arizona v. Youngblood*, 488 U.S. 51, 59 (1988).

15

Petitioner finally contends the verdicts were against the great weight of the evidence. An assertion that the verdicts were against the great weight of the evidence does not state grounds for habeas corpus relief. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial. *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998). This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id.* at 133 n.8. As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10–cv–1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08–cv–642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review."). Because this Court lacks authority to review a state court's application of its own law, the state-court determination that the verdicts were not against the great weight of the evidence is final.

     V.    <u>Ineffective assistance of trial counsel (habeas issues II and III)</u>

16

Petitioner argues that his trial counsel was ineffective in four respects: (A) counsel failed to obtain and present forensic evidence of the items from the Red Robin restroom trashcan; (B) counsel failed to use the bus tickets in the name of another man, found in the trashcan, as evidence exculpating Petitioner; (C) counsel failed to move to suppress the trashcan evidence even though it was handled improperly; and (D) counsel failed to request a corporeal lineup.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel:  (1) did counsel's performance fell below an objective standard of reasonableness; and (2) did counsel's deficient performance prejudice the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington,* 562 U.S. at 105 (citing *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009))*; see also Burt v. Titlow,* 571 U.S. 12, 13 (2013); *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011); *Premo v. Moore,* 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.; Jackson v. Houk,* 687 F.3d

17

723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington,* 562 U.S. at 102).

In resolving Petitioner's ineffective assistance claims, the Michigan Court of Appeals applied the following standard:

> "An ineffective assistance claim includes two components: 'First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense.' *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the deficiency component, a defendant must show that counsel's performance fell below 'an objective standard of reasonableness' under 'prevailing professional norms.' *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). With respect to the prejudice aspect, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have been different. *Id*. at 663-664. The defendant also must overcome the strong presumptions that 'counsel's conduct [fell] within the wide range of reasonable professional assistance' and that counsel's actions were sound trial strategy. *Strickland*, 466 US at 689."

(Mich. Ct. App. Op., ECF No. 14-9, PageID.468 (citation omitted).) Once again, it is apparent that the court of appeals applied a standard that was entirely consistent with clearly established federal law. Moreover, as set forth below, the court of appeals applied the standard reasonably.

## A.    Forensic evidence

The state appellate court determined that counsel's decision to forego forensic testing of the trashcan evidence was not unreasonable:

In order to overcome the presumption of sound trial strategy, the defendant must show that trial counsel's failure to prepare for trial resulted in counsel's ignorance of valuable evidence that would have substantially benefited the accused. *People v Bass*, 223 Mich App 241, 252; 581 NW2d 1 (1997), citing *People v Caballero*, 184 Mich App 636, 640, 642; 459 NW2d 80 (1990).

18

On this record, there is no indication that DNA or fingerprint analysis of the items located in the Red Robin restroom would have revealed valuable, exculpatory evidence.  Obtaining fingerprint or DNA evidence actually could have supplied direct evidence of defendant's guilt in this otherwise circumstantial case.  Counsel could have reasonably determined that the safer course was to challenge the adequacy of the evidence available and leave well enough alone.

Defendant contends that counsel should have highlighted the shortcomings in the officers' investigation, specifically the failure to conduct forensic analysis of the evidence and to question the other individuals present in the Red Robin bathroom. Defense counsel did elicit testimony to emphasize these failures, however, and defendant's claim is completely without merit.

(Mich. Ct. App. Op., ECF No. 14-9, PageID.468-469.)  The possible rationale offered by the state court for counsel's decision to not pursue forensic testing is, on its face, not unreasonable.  The doubly deferential standard requires nothing more.  The circumstantial evidence linking Petitioner to the trashcan evidence was so significant, a negative forensic test result would not overcome it.  Moreover, a positive forensic test would have definitively sealed Petitioner's fate.    Under those circumstances, counsel's decision seems eminently reasonable, ending the *Strickland* analysis at the first step.

### B.    The bus tickets

The trashcan evidence included bus tickets in the name of another man. Petitioner argues his counsel was ineffective because he should have used the tickets to cast suspicion on the other man, but she instead argued to suppress them as evidence.  The prosecutor offered photos of the tickets and other documents to show that Petitioner was stealing personal papers to set up accounts and apply for credit cards.  (Trial Tr., ECF No. 14-5, PageID.378-379.)  Petitioner's counsel successfully

argued that the documents were irrelevant to the charges before the trial court and, therefore, would be prejudicial evidence of potential additional offenses.  (*Id.*)

The court of appeals concluded counsel's approach was "within the realm of sound judgment."  (Mich. Ct. App. Op., ECF No. 14-9, PageID.469.)   Counsel's decision to keep the bus tickets out, and the reasons she offered, appear reasonable, particularly when considered in contrast to Petitioner's proposed use of that evidence. Essentially, Petitioner contends the name on the bus tickets would have offered a more compelling suspect than Petitioner even though the bus tickets were found balled up with other stolen papers and burglary tools in a shirt and hat that two witnesses testified Petitioner had been wearing just moments before they were found in the trashcan.  Petitioner's expectation that the evidence could have been used to achieve that end is unreasonable, not counsel's failure to so use the evidence.  The appellate court's factual determination was reasonable, as was its application of Strickland to those facts.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

### C.    Failure to seek suppression of the other trashcan evidence

Petitioner next argues counsel was ineffective for failing to seek suppression of the photographs Officer Swantek took of the items he removed from the Red Robin restroom trashcan.  Officer Swantek testified that he removed the items from the trashcan and he secured them in a standard evidence bag.  (Trial Tr., ECF No. 14-5, PageID.383-384.)  He also took the photographs. Petitioner contends that his counsel should have moved "to suppress this evidence because the police failed to investigate

the scene, interview witnesses, and their mishandling of the evidence [precluded] adequate forensic examination." (Pet'r's Br., ECF No. 1, PageID.59.) The court of appeals disagreed:

> Defendant contends that his counsel should have sought suppression of the evidence uncovered in the Red Robin bathroom because it was "improperly handled." There is no record indication whether the officer collecting the evidence wore gloves when he removed the items from the trashcan. The officer placed the items in a reusable plastic bag rather than an official evidence bag. The items were then intermingled with property removed from defendant's person at the county jail. Had forensic evidence been necessary to establish the elements of the charged offenses in this case, defense counsel likely should have challenged the officers' actions. However, Campbell caught defendant red-handed in an attempt to break and enter a vehicle and positively identified him only 15 to 20 minutes after the offense. Circumstantial evidence linked this defendant to the robbery in Seda's car. Forensic evidence or the lack thereof played no role in the case. Accordingly, defense counsel had no reason to seek suppression on this ground.

(Mich. Ct. App. Op., ECF No. 14-9, PageID.469.) The appellate court concluded there was no ground to suppress the evidence.

As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'" *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005)).

Because there was no reason to suppress the evidence, a motion seeking suppression would have been meritless.  The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'" *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer*, 264 F.3d at 676).  *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, Petitioner has failed to demonstrate that the court of appeals' rejection of his ineffective assistance claim is contrary to, or an unreasonable application of, *Strickland*.

### D.    Corporeal lineup

Petitioner also attacks counsel's performance because counsel did not seek a corporeal lineup.  The court of appeals flatly rejected that claim:

Defense counsel did request a corporeal lineup during the preliminary examination in district court.  The district court found that eye witness identification was not a material issue for trial and denied the motion.  Defense counsel cannot be deemed ineffective when he or she does the very action urged.

(Mich. Ct. App. Op., ECF No. 14-9, PageID.469.)  The Michigan Court of Appeals' factual determination that counsel requested a lineup is amply supported by the record.  (Prelim. Exam. Tr. I, ECF No. 14-3, PageID.261.)  The trial court denied that relief.  (*Id*., PageID.265.)  The appellate court's conclusion that counsel cannot be deemed ineffective for doing the very action his client urges is unassailable. Petitioner is not entitled to habeas relief for ineffective assistance of counsel.

### VI.    Improper Notice

Petitioner next challenges the notice he received regarding the prosecutor's intention to seek an enhanced sentence because of Petitioner's status as a habitual offender.  (Pet'r's Br., ECF No. 1, PageID.62-65.)  The Due Process Clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal defendant fair notice of the charges against him so as to provide him an adequate opportunity to prepare his defense.  *See, e.g., In re Ruffalo*, 390 U.S. 544 (1968); *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th Cir. 1977).  This requires that the offense be described with some precision and certainty so as to apprise the accused of the crime with which he stands charged. *Combs v. Tennessee*, 530 F.2d 695, 698 (6th Cir. 1976).  Such definiteness and certainty are required as will enable a presumptively innocent man to prepare for trial.  *Id*.  "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." *Roe v. Baker*, 316 F.3d 557, 570 (6th Cir. 2002) (quoting *Mira v. Marshall*, 806 F.2d 636, 639 (6th Cir. 1986)).  "An indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." *Mira*, 806 F.2d at 639.  In other words, as long as "sufficient notice of the charges is given in some . . . manner" so that the accused may adequately prepare a defense, the Fourteenth Amendment's Due Process Clause is satisfied. *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Watson*, 558 F.2d at 338.

Here, Petitioner is not challenging the notice he received with regard to the charges against him, he is challenging the notice regarding the prosecutor's intent to

seek an enhanced sentence because of Petitioner's prior convictions. The notice requirements regarding that intention, however, are not as stringent. As the Supreme Court noted in *Oyler v. Boles*, 368 U.S. 448 (1962), "a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense." *Id*. at 452. Here, Petitioner received notice well in advance of trial. Petitioner represented to the trial court that he had notice regarding the enhancement no later than January 5, 2014, more than a month before trial. (Trial Tr., ECF No. 14-5, PageID.321-322.) Petitioner contends that is not sufficient.

Petitioner does not rely on the clearly established federal law of *Ruffalo* or *Oyler;* rather, he conflates the state procedural requirement that notice be provided within 21 days after arraignment with the demands of due process. The Michigan Court of Appeals rejected Petitioner's attempt to elevate form over substance:

> Here, defendant was provided a copy of his information, along with the habitual offender notice, and had the opportunity to discuss this document with his counsel. Trial commenced with no irregularities and defendant's rights were protected.

(Mich. Ct. App. Op., ECF No. 14-9, PageID.470.) The court of appeals' analysis is consistent with the demands of clearly established federal law and its factual determinations are well-supported by the record. Accordingly, Petitioner is not entitled to habeas relief.

## VII.    Inaccuracies in the Presentence Investigation Report (PSIR)

Petitioner next argues that his due process rights were violated because he was sentenced based on inaccurate information. Specifically, the PSIR states this:

"'Approximately three hours later a police officer was called to the Red Robin Restaurant regarding a motor vehicle break in.'" (Pet'r's Br., ECF No. 1, PageID.69.) Petitioner complains that the statement is untrue.  Petitioner states the report should read: "The Police were called to an AT&T parking lot after Richard Campbell allegedly witnessed a person attempting to open a car door." (*Id.*)  The harm from the error, Petitioner opines, accrues from the implication that Petitioner evaded police for three hours instead of just a matter of minutes.  (*Id.*, PageID.70.)  Petitioner suggests that this false statement elevated his guidelines score and permitted the inference of an established propensity to commit such crimes.  (*Id.*)

A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).  A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 444, 447.

The Michigan Court of Appeals was not swayed by Petitioner's claims regarding the importance of the allegedly false statement:

We first note that this information is completely irrelevant to the severity of the crime, played no role in the calculation of the sentencing guidelines, and can have no impact on defendant's treatment during imprisonment. Moreover, defendant waived his right to challenge the correctness of this information by expressly approving the PSIR's accuracy at the sentencing hearing. *See People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011); *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000).

(Mich. Ct. App. Op., ECF No. 14-9, PageID.470.)  The appellate court's factual determinations that the "false" information was irrelevant to the severity of the crime and played no role in the calculation of the sentencing guidelines are not unreasonable on this record.  Those determinations preclude a finding that Petitioner's due process rights were violated because they foreclose a finding that the trial court relied on the information in imposing sentence as required by *Tucker*. Petitioner has failed to show that the appellate court's determinations are contrary to, or an unreasonable application of, *Tucker*; thus, he is not entitled to habeas relief.

## Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a

reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

## **Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  *See Slack v. McDaniel*, 529 U.S. 473 (2000).

Dated:  March 13, 2018                             /s/ Phillip J. Green
                                                    Phillip J. Green
                                                    United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).